## R.L.K. AND COMPANY *v.* STATE TAX COMMISSION

Mr. Norman J. Wiener of Portland, Oregon, argued the cause for plaintiff.

Mr. Theodore W. deLooze, Assistant Attorney General, Salem, Oregon, argued the cause for defendant.

Decision for plaintiff rendered May 17, 1966.

EDWARD H. HOWELL, Judge.

This case is before the tax court again after having been remanded to the defendant commission for a determination of the value of the plaintiff's interest in the property involved. See *R.L.K. and Company v. Commission,* 1 OTR 584 (1964).

Plaintiff operates the Timberline Lodge on Mt. Hood under a special use permit with the United States Forest Service. Two issues were involved in the first case: whether plaintiff's interest in the special use permit constituted a taxable interest and, if so,

what was the true cash value of that interest. The tax court for the reasons cited in the first case held that R.L.K.'s interest in the special use permit constituted a taxable interest.

On the issue of the true cash value of plaintiff's interest the tax court held that neither side had used the proper method of appraising plaintiff's interest and remanded the case to the defendant commission for further consideration in light of the decision of the tax court. The case is back in the Tax Court for the year 1962 and is also before the court for the subsequent years 1963 and 1964.

The appraisal problem arose over the interpretation of ORS 307.060. This statute provides that a lease or other interest less than fee simple in property belonging to the United States shall be taxed at its full true cash value subject only to a deduction for restricted use. The Tax Court disagreed with the defendant's method of using the true cash value of the landlord's interest and in not considering the declining term of the special use permit which had a fifteen-year term and expired in 1974. The court also disagreed with the plaintiff's method of valuing plaintiff's interest based upon what a hypothetical purchaser would pay "to step into the shoes of the United States Forest Service as the subject property's owner restricted by the special use permit * * *."

◼ The Tax Court decided that the proper interpretation of ORS 307.060 required a valuation of the fee interest less a deduction for restricted use. After finding the valuation of the fee interest without any restrictions the court stated that the appraiser should reduce the unrestricted fee value by applying the restrictions contained in the special use permit, including

the remaining term of the permit and plaintiff's payments in lieu of rent.

While the decision in the first case for the year 1962 was made by a former judge of the Tax Court and this court may not be bound by the prior decision because the case is back after being remanded to the tax commission, this court completely agrees with the method of valuing plaintiff's interest as set forth in that decision.

Both parties agree that the value of the fee interest cannot be determined by using market data because of the lack of comparable sales.

For 1962, the year involved in the first case, the defendant's appraiser used the income approach "because it seems to be the best indication of value." Using this approach he arrived at, and the defendant commission approved, a true cash value of $212,630 for plaintiff's interest in the property. After the case was remanded to the commission by the Tax Court the commission disagreed with plaintiff's appraiser and with their own appraiser and increased the value to $380,000 for 1962. In doing so the defendant used the replacement cost approach instead of the income approach previously used by its appraiser, Mr. Stone. The commission was reluctant to give any substantial consideration to the declining term of the special use permit and allowed only a $1000 deduction for each year of the declining term of the permit.[1]

---

[1] The decision in the first case called specific attention to the fact that the declining term of the permit should be considered in valuing plaintiff's interest. When the 1962 case was remanded to the commission, its hearing officer stated:

"* * * This additional deduction [for the declining term of the permit] contemplated by Judge Gunnar is not one which in the opinion of the hearing officer, would be contemplated by an operator using good management. Such an operator

The valuations involved for all three tax years, 1962, 1963 and 1964, were consolidated for trial.

At the trial defendant's appraiser, Mr. Stone, appraising plaintiffs' interest for 1962, using the cost approach, testified to a value of $402,000. Thus, for 1962 the defendant has valued plaintiff's interest first using the income approach and later the cost approach at $212,630, $380,000 and finally $402,000.

For 1963 Mr. Stone first valued plaintiff's interest at $335,990. This was raised by the defendant to $575,000 in its order of December 1, 1965, and at the time of the trial on April 11, 1966, Mr. Stone testified to a value of $601,000.

For 1964 plaintiff's interest was originally valued at $335,990, then at $560,000, and at the time of trial, at $581,500.

It is clear from Mr. Stone's appraisal and his testimony, particularly on cross examination, that insufficient consideration was given to the many restrictions involved in the special use permit and, contrary to the directions of the Tax Court in the opinion in the 1962 case, to the declining term of the permit. His final appraisal introduced at the trial had the following to say concerning the term of the permit:

"* * * A buyer would consider the attitude of

would of course contemplate a renewed permit, and it would seem unreasonable to assume otherwise, and an operator bargaining for the use of the facilities under the permit and intending reasonable operation would not necessarily make any such deduction even though he were to acquire the operation towards the end of the permit, but of course would anticipate continuing under a new permit relationship. * * *"

It is difficult to agree with this statement. It would appear rather obvious and logical that one interested in dealing for a special use permit with a governmental agency would have a primary interest in whether the permit had a remaining life of fifteen years or fifteen days.

the U. S. Forest Service, the experience of the current permittee and other permittees and would give only a nominal allowance, if any, for the permit term."

This is inconceivable. It would seem that a buyer, before he invested a large sum of money in the Timberline Lodge facilities would be most interested in the term of the permit, especially considering he is dealing with a governmental agency. This facility could be altered or closed down entirely if the federal government decided it did not want to spend any further sum in maintaining it.

Mr. Elmer Kolberg appraised the property for the plaintiff and used the income approach. He believed that the replacement cost approach could not be used because of the "tremendous" amount of functional and economic obsolescence present in the huge lodge at Timberline. He also gave consideration to the value of plaintiff's interest based on the declining term of the special use permit. He valued plaintiff's interest at $71,300 for 1962, $185,450 for 1963, and $175,000 for 1964.

The plaintiff has sustained the burden of proof and the values of plaintiff's interest in the Timberline Lodge facilities valued under ORS 307.060 are:

| 1962 | 1963 | 1964 |
|------|------|------|
| $71,330 | $185,450 | $175,000 |

Costs to neither party.